## Tilton *versus* Miller & Co.

1. The difference in the result produced by a model and its imitation is corroborative of a difference between them.

2. The rule is especially applicable to things known only to experts.

3. A fact which directly proves the truth of an assertion may be adduced to corroborate and confirm it.

4. Where the question is, was an article made according to a model, its want of power to produce the same result is evidence that it was not so made.

November 4th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county*: No. 94, to October and November Term 1869.

This was an action of assumpsit, brought July 3d 1868, by Edward Miller & Co. against J. C. Tilton.

The declaration was that the plaintiffs, on the 7th of February 1867, contracted to make for the defendant 1000 dozens No. 0 gas generating burners, as per sample shown by the defendant, at the rate of $2 per dozen, and tools for No. 1 burners at the regular prices—No. 0 to be delivered in part by March then next, the others April 1st—charges to be made as then agreed upon; that the plaintiffs had always been ready to deliver the articles according to the contract, and had delivered part; the defendant refused to pay for them.

The defence was that the burners were not according to the sample and would not generate gas, &c.

The case was tried February 15th 1869, before Kirkpatrick, J.

The plaintiffs gave in evidence the following letter:—

"February 7th 1867.

"Messrs. E. Miller & Co.

"Gents: Please make the following named goods at the price named:

"1000 doz. 0 gas generators, as per sample, at $2 per dozen.

"Also, tools for No. 1 gas generator burner, as per sample shown, at regular prices for making tools. Changes to be made as this day agreed upon. The No. 0 to be delivered in part by the 1st of March, and the No. 1 about the 1st of April.

"J. C. TILTON."

They then gave evidence by J. J. Marcey that a sample had been sent them; the defendant was at their works and suggested some should be made of brass; that afterwards defendant wrote, under date of February 16th 1867, "the model burner which you sent by express came to hand to-day. I have just examined it, and am pleased with it; with a little alteration, it will answer the

[Tilton v. Miller.]

purpose, just as I want it ;" and, after specifying the alterations, proceeded, " I do hope you will make the generators on the above plan, instead of the way we were talking," &c.

Witness testified that defendant's agent, sent by him for the purpose, had tested the burner and found it right, and told the plaintiffs to go on. They manufactured 1000 dozens. All the alterations were made at the defendant's suggestion. They shipped 117 dozens up to April 18th. On the 23d they received a telegram to "ship no more." They continued to ship till May 31st, the amount then being 746 dozens, of which 100 dozens were afterwards returned. The plaintiffs' claim, as filed, was for $1292. The plaintiffs gave in evidence a number of letters from defendant, for the purpose of showing that alterations to the sample had been directed by the defendant, and evidence that the burners had been made according to the directions.

The defendant called M. M. Tilton, and proposed to ask him, " whether the burners sent by plaintiffs to defendant worked as well and produced the same results as to burning as the sample of January 2d 1867, contract sample ;" also to prove by him, " that those burners, made by the plaintiffs and sued for in this action, would not generate gas, and that the sample would ; for the purpose of showing that the plaintiffs have failed to fulfil their contract." Also, " that he personally knows the sample sent January 2d 1867, being the same mentioned in the contract of February 7th 1867 ; that the same was made by the Whiting Co., of New York ; that it worked well ; that it was one of many thousands made by said Whiting Co., all of which worked well."

" To be followed by evidence that the generators made by plaintiffs sued for in this case did not correspond with the sample in manner or form, and did not produce the results which the contract sample did."

These offers were rejected, and several bills of exception sealed.

The defendant exhibited samples of the different burners, and the witness pointed out the difference in them ; testified that the Miller burner was tin—the Whiting, brass ; the Whiting was bell-mouthed—the other, not so ; the chimneys different in size and mode of fastening ; wick tubes different from the sample ; he stated and exhibited many other particulars in which the burners differed.

There was other evidence by both parties.

A number of points not necessary to particularize were submitted on both sides.

The judge, in his general charge, said :—

* * *　" The questions involved are two—

" 1. What, from all the evidence in the case, was the sample ?

" 2. Did the plaintiffs manufacture and deliver to the defend

[Tilton *v.* Miller.]

ant, in accordance with the terms of the contract, generators which were counterparts or fac similes of the sample so delivered?

"If they did, they are entitled to recover the whole amount of their claim, as you, from all the evidence submitted to you, may find it to be. If they did not, they are not entitled to recover the whole or any part of their claim, and your verdict must be for the defendant.

"Such, we instruct you, is the rule of law by which you will determine a verdict, from all the facts in the case, as you may find them.

"In determining what was the sample, you must, as already intimated by us, take all the evidence in the case. Whether you will find it in the sample simply, as originally sent, or in that sample modified and changed by subsequent action of the defendant or his agent, by personal suggestion, or by letters, we leave you to determine. You will take all the testimony, and no fragmentary part or parcel of it, in arriving at this important and controlling conclusion.

"Having thus, by the test or rule we have just laid down, discovered, to your satisfaction, what the 'contract sample'—for so, for the sake of simplicity, we may call it—really was, your next and equally important inquiry will be:

"Did the plaintiffs manufacture and deliver to the defendant a counterpart, a fac simile, an article corresponding, in all respects and particulars, with that which you may have found the 'contract sample' to have been? If they did, as already stated, they are entitled to recover; and if not, they are not, and your verdict must be for the defendant.

"It is possibly enough for us to lay down these rules to you for your guidance, without more by way of explanation, being answerable elsewhere for our errors, if any we commit in so doing.

"We will, however, add that these rules so submitted by us are founded as well upon authority as upon reason and common sense." * * *

The judge then referred in detail to a number of authorities, in support of his instructions.

The verdict was for the plaintiffs for $1417.97.

The defendant took out a writ of error.

He assigned sixteen errors to the answers of the court to the points and to portions of the general charge.

The 12th was, "Reading to the jury the quotations from authorities set forth in the charge, and applying them to the case on trial."

The 15th, 16th and 17th were respectively to the rejection of his offers of evidence.

*T. Schoyer* and *C. B. M. Smith*, for plaintiff in error.

[Tilton v. Miller.]

*J. H. Hampton* (with whom was *A. H. Miller*), for defendants in error, cited on the 17th error: Addison on Contracts 231; Ollivant *v.* Bayley, 5 Ad. & Ellis, N. S. 288; Chanter *v.* Hopkins, 4 M. & W. 399; Carnac *v.* Warriner, 1 C. B. 356; Mason *v.* Chappel, 15 Grattan 72; Misner *v.* Granger, 4 Gilman 69; Getty *v.* Rountree, 2 Chandler 28; Brown *v.* Murphee, 31 Miss. 91; Kellogg *v.* Denslow, 11 Conn. 411.

The opinion of the court was delivered, January 3d 1871, by

AGNEW, J.—A careful examination of the sixteen errors assigned to the charge of the learned judge of the District Court, and his answers to the points, brings to light no material error in his instruction to the jury. An elaboration of authorities to a jury is not useful, and sometimes tends to confuse, but here the judge so clearly stated the points for the attention and examination of the jury, it does not seem probable they could have been misled by the detailed reference to authorities. It is not necessary that a judge should encumber his charge with a discussion of the law, but rather to give definite instructions to the jury; the Act of Assembly allowing him to furnish his reasons, which he may always subjoin if explanation be necessary.

This was a contract to make 1000 dozens of gas generators *as per sample* at $2 per dozen. The judge was therefore clearly right in instructing the jury to ascertain first what was the contract sample. There was evidence tending to show that alterations had been made in the sample at the request of the defendant. He was therefore right also in directing the jury to ascertain from the evidence whether the sample was so altered, and if so, what the alterations were, and thus to arrive at the true contract sample—the model by which the plaintiffs were to make the gas generators called for by their contract. He was right in directing them to determine upon the evidence whether the gas generators made by them for the defendant corresponded with the sample, and if they did, the plaintiffs thereby fulfilled their contract and were not responsible for the result—that is for the operation of the generator. They did not contract to make an article which would produce a certain result, but only to make one to correspond exactly with the proposed model. If this were done fully and fairly their whole duty was performed, and they had a right to recover for so many as they had made and delivered according to their contract.

Admitting then the correctness of this instruction, and that the learned judge was right in ruling that correspondence between the article made and the sample was the true and only question, and that the maker is not liable for the result expected to be produced, was he right in his rulings on the evidence? Is there no difference between the liability of the maker for this result, and

[Tilton *v.* Miller.]

the evidence which the result affords of a want of correspondence between the thing made and the model? Clearly there is a marked distinction between the propositions. A result or effect produced may be most convincing corroborative evidence of a difference between the model and the imitation. Especially is this true of those things which lie out of the range of ordinary observation, and are known only to experts. The expert may be called to prove the actual difference, but when this is done, it does not follow that the legal measure of proof is full. A fact which directly proves the truth of an assertion may undoubtedly be adduced to corroborate and confirm it. If an expert state a fact which cannot be appreciated by ordinary observation, and state it to a body of unskilled men (such as a jury is) the force of his statement depends wholly upon his skill and his credibility, and has nothing in the common sense of the jury to confirm it. When he declares that there is a material and substantial difference between two subjects of comparison, and if one of them will produce a desired and expected effect, and the other will not, why shall not this practical test of the difference, to wit, the result produced by each, be given in evidence to corroborate and confirm his statement? It is no answer to say that the maker is not liable for the result of an article he makes according to the model, for that is not now the question. The question is, did he make it in conformity to his model, and clearly its power to perform the same result as the model, is evidence tending to show he did so make it, while its want of power to do so, is evidence tending to prove the contrary.

If a delicate piece of mechanism, such as a watch having a certain movement, be the model, and can be shown to run well, and if the imitation watch be proved to differ from the model in certain respects alleged to be essential to its successful operation, why shall the party not be permitted to show in corroboration of these departures from the model, that the imitation watch will not keep time, or will not run at all? Can anything be more corroborative of the skill and truthfulness of the witness who asserts these differences between the watches? Such is the precise case before us. Here is a gas generator intended to produce a certain effect upon a subtle fluid, and to convert it into gas by means of heat; an article unknown to the jury; peculiar in its structure, and whose laws of action, even an expert may find it difficult to explain. Why should not the party, after showing departures in form and structure in the imitation from the model, be permitted to show that the model will produce a certain effect which the imitation will not? Is it not strong evidence that the differences pointed out are real and substantial, and therefore not to be overlooked and disregarded by a jury who may not, for want of skill in the particular matter, be able to discern the deviation of the

[Tilton *v.* Miller.]

imitation from the sample. The defendant below made several offers of evidence to prove by the results the difference between the sample and the generators manufactured by the plaintiffs, all of which were overruled by the court on the general ground of incompetency and irrelevancy. The one set forth in the 17th assignment of error is the only one that need be noticed. The offer was to show by the witness that he knew personally the sample and its successful operation, and then to show that the generators made by the plaintiff did not correspond with the sample in *manner or form*, and that they did not produce the results which the contract sample did. The court rejected the latter part of this offer. The defendant not only offered but did prove the former part of the offer, by producing a sample and then pointing out the differences in manner and form of that made by the plaintiffs. The Whiting, or sample, is bell-mouthed in the perforated case, the Miller & Co. is not. In one the chimney is movable, and in the other it is not. In one the burner tube is long, in the other it is short. The wick tube of the Miller & Co. did not correspond with the wick tube of the contract sample, one being shorter than the other; and an entire difference in the mode of fastening them on. The witness mentioned other differences also. Now as the jury have found that the generators made by the plaintiffs were made according to the sample, it is evident they either disbelieved this witness, or supposed the differences described by him were unsubstantial and immaterial. But suppose the defendants had been permitted to corroborate the testimony of the witness by showing that the Whiting or sample generator would perform well the intended purpose, and that the plaintiffs' would not, and failed to generate gas for illumination, who can say that this important corroborating fact would not have turned the scale and caused the jury to render a different verdict on this question of fact, whether the generators were really made alike? This refusal of the court to receive the evidence as offered, was therefore an error, and the judgment is reversed and a *venire facias de novo* is awarded.